

ORIGINAL

FILED
DISTRICT COURT OF GUAM
NOV 15 2019
JEANNE G. QUINATA
CLERK OF COURT

SHAWN N. ANDERSON
United States Attorney
LAURA C. SAMBATARO
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagåtña, Guam 96910
PHONE: (671) 472-7332
FAX: (671) 472-7215

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 19-00034 |
|---|---|
| Plaintiff, | |
| vs. | **UNITED STATES' TRIAL BRIEF** |
| JAMES RUMBAUA DAMASO, | Trial: December 6, 2019 at 10:00 a.m.<br>Judge: Frances M. Tydingco-Gatewood<br>Chief Judge |
| Defendant. | |

**TABLE OF CONTENTS**

I. INTRODUCTION ..........................................................................................................1
II. CASE POSTURE ........................................................................................................1
III. PRETRIAL MOTIONS ...............................................................................................1
IV. FACTS THE GOVERNMENT INTENDS TO PROVE AT TRIAL ........................1
V. CHARGE AND RELATED ISSUES .........................................................................1
    A. Possession of Cocaine Hydrochloride with Intent to Distribute ....................4
    B. Forfeiture ........................................................................................................5
VI. ANTICIPATED EVIDENCE .....................................................................................7
    A. Postal Inspector Richard Tracy .....................................................................7
    B. Jeffrey Baldonado .........................................................................................7
    C. CET Officer Joseph Taijeron ........................................................................7
    D. Special Agent Robert Ramirez .....................................................................8
    E. Special Agent Richard Flores .......................................................................8
    F. Special Agent Erfel Matanguihan .................................................................8
    G. Special Agent Erwin Fejeran ........................................................................8
    H. Postal Inspector Connie Worrel ....................................................................8
    I. Forensic Chemist Andrew Bowen .................................................................9
VII. EVIDENTIARY AND OTHER TRIAL ISSUES ......................................................9
    A. Photographs ...................................................................................................9
    B. Witness Impeachment by Prior Bad Acts .....................................................9
    C. Duplicates ....................................................................................................10
    D. Chain of Custody ........................................................................................10
    E. Expert Witnesses .........................................................................................11
    F. Statements of Non-Testifying Agents .........................................................11
    G. Prima Facie Threshold for Authentication .................................................12
    H. Explanation of Investigation .......................................................................12
VIII. CONCLUSION .........................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Cox v. United States,*
   447 U.S. 908 (1980)..................................................................................................9
*Daubert v. Merrell Dow Pharm, Inc.,*
   509 U.S. 579 (1993)................................................................................................11
*Libretti v. United States,*
   516 U.S. 29, 39 (1995)..............................................................................................6
*People of the Territory of Guam v. Ojeda,*
   758 F.2d 403 (9th Cir. 1985).....................................................................................9
*United States v. Barela,*
   973 F.2d 852 (10th Cir. 1992).................................................................................12
*United States v. Black,*
   767 F.2d 1334 (9th Cir. 1985).................................................................................12
*United States v. Brannon,*
   616 F.2d 413, 416 (9th Cir. 1980).............................................................................9
*United States v. Chang An-Lo,*
   851 F.2d 547, 557 (2d Cir. 1988)............................................................................10
*United States v. Cromer,*
   389 F.3d 662 (6th Cir. 2004)...................................................................................12
*United States v. Dare,*
   425 F.3d 634, 642 (9th Cir. 2005).............................................................................7
*United States v. Davis,*
   183 F.3d 231, 357 n.12 (3d Cir.), amended, 197 F.3rd 662 (3d Cir. 1999) ............10
*United States v. Delgado,*
   357 F.3d 1061, 1065 (9th Cir. 2004) ........................................................................5
*United States v. Garmany,*
   762 F.2d 929, 938 (11th Cir. 1985).........................................................................10
*United States v. Georgalis,*
   631 F.2d 1199, 1205 (5th Cir. 1980).......................................................................10
*United States v. Geston,*
   299 F.3d 1130, 1137 (9th Cir. 2002) ......................................................................10
*United States v. Gil,*
   58 F.3d 1414, 1422 (9th Cir. 1995) ........................................................................11
*United States v. Gomez,*
   908 F.2d 497, 502 (9th Cir. 1990) ............................................................................5
*United States v. Hankey,*
   203 F.3d 1160 (9th Cir. 2000) ................................................................................10
*United States v. Harrington,*
   923 F.2d 1371 (9th Cir. 1991).................................................................................11
*United States v. Innie,*
   7 F.3d 840, 844 (9th Cir. 1993), *cert. denied*, 511 U.S. 1042 (1994) .....................5

*United States v. Lowe,*
  767 F.2d 1052 (4th Cir. 1985)........................................................................................12
*United States v. Martin,*
  897 F.2d 1368 (6th Cir. 1990)........................................................................................12
*United States v. Myers,*
  21 F.3d 826 (8th Cir. 1994)..............................................................................................7
*United States v. Ocampo,*
  937 F.2d 485, 488 (9th Cir. 1991) ...................................................................................5
*United States v. Pelullo,*
  14 F.3d 881, 904 (3rd Cir. 1994).....................................................................................6
*United States v. Smith,*
  966 F.2d 1045, 1050-53 (6th Cir. 1992)..........................................................................7
*United States v. Solorio,*
  669 F.3d 943 (9th Cir. 2012).........................................................................................11
*United States v. Stewart,*
  420 F.3d 1007, 1021 n.13 (9th Cir. 2005) ....................................................................10
*United States v. Tenerelli,*
  614 F.3d 764 (8th Cir. 2010).........................................................................................12
*United States v. Voigt,*
  89 F.3d 1050 (3rd Cir. 1996)...........................................................................................7

**Statutes**
Title 18, United States Code, Section 2 ................................................................................5
Title 18, United States Code, Section 982(a)(1) ...................................................................1
Title 21, United States Code, Section 802(11) .....................................................................5
Title 21, United States Code, Sections 841(a)(1) & (b)(1)(A)(viii) .....................................5
Title 21, United States Code, Section 853.........................................................................1, 5

**Rules**
Fed. R. Crim. P 32.2(b) .........................................................................................................6
Fed.R.Evid. 403 ..................................................................................................................10
Fed.R.Evid. 608 ....................................................................................................................9
Fed.R.Evid. 702 ..................................................................................................................11
Fed.R.Evid. 803 ..................................................................................................................11
Fed.R.Evid. 901 ....................................................................................................................9
Fed.R.Evid. 1003................................................................................................................10

**Other Authorities**
Ninth Circuit Manual of Model Criminal Jury Instructions No. 9.15 ..................................5

## I. INTRODUCTION

The United States submits this brief in compliance with the Court's Order entered on October 2, 2019. (ECF No. 19). This case is set for jury trial on December 6, 2019, at 10:00 a.m. The Government's trial brief sets forth a summary of the basic facts the Government intends to prove at trial, and addresses legal and evidentiary issues the Government anticipates arising at trial.

## II. CASE POSTURE

The grand jury returned a True Bill[1] on August 7, 2019 charging the defendant, JAMES RUMBAUA DAMASO (Defendant), with the offense of possession of fifty or more grams of methamphetamine hydrochloride with intent to distribute, and notices of forfeiture under Title 21, United States Code, Section 853.

## III. PRETRIAL MOTIONS

No pretrial motions have been filed in this case

## IV. FACTS THE GOVERNMENT INTENDS TO PROVE AT TRIAL

On July 19, 2019, a search warrant was issued for a package addressed to Jeffrey Baldonado, #127 Rose Court, Latte Heights, Mangilao, Guam 96913 (hereinafter referred to as the BALDONADO package). Upon execution, approximately 1,800 gross grams of a white crystalline substance was discovered inside the BALDONADO package. The substance was divided into four separate bags within the BALDONADO package. The substance was subsequently removed from the package and field tested presumptive positive for the presence of methamphetamine.

---

[1] ECF No. 1.

UNITED STATES' TRIAL BRIEF - 1

On July 23, 2019, a tracking warrant was issued for the BALDONADO package, along with an anticipatory warrant for the residence of #127 Rose Court, Latte Heights, Mangilao, Guam. On July 24, 2019, a controlled delivery was conducted by the United States Postal Inspection Service (USPIS) with other law enforcement agencies. At approximately 10:00 AM, the BALDONADO package was delivered to the address of #127 Rose Court, Latte Heights, Mangilao, and left on the front doorstep. A female identified as Zanainda Baldonado was seen picking up the BALDONADO package and putting it inside the trunk of a black Toyota Corolla. At approximately 1:10 PM, surveillance was conducted on the black Corolla with license plate OR4744 after it left 127 Rose Court until approximately 6:50 PM when the vehicle returned to the residence of 127 Rose Court. Surveillance continued, at which time a male individual later identified as JEFFREY BALDONADO (BALDONADO) was seen leaving the residence with the BALDONADO package at approximately 8:00 PM in a Silver Scion.

Law enforcement conducted surveillance and observed the Scion proceed to the residence of 169 Chalan Nigas, in Dededo at approximately 8:20 PM. According to the GPS tracking device placed in the BALDONADO package pursuant to the tracking warrant, the package was taken into the residence of 169 Chalan Nigas and was then moved to the back of the residence. At approximately 10:00 PM, the breecher that had been placed in the BALDONADO package pursuant to the tracking warrant alerted to the presence of light, indicating that the BALDONADO package had been opened. Surveillance units observed BALDONADO exiting the residence and entering his vehicle. A traffic stop was conducted and officers observed the BALDONADO package on the front passenger seat. BALDONADO was read his Miranda Rights and agreed to speak with Postal Inspector Richard Tracy. Clue spray was found on BALDONADO's hands and clothing.

BALDONADO stated that he took the package to 169 Chalan Nigas and gave it to a friend known to BALDONADO as "Kuya." "Kuya" took the package inside the residence and then returned with the opened box. "Kuya" gave the open box to BALDONADO and asked BALDONADO to "take it and get rid of it." "Kuya" also gave BALDONADO one of the four bags in "sham" methamphetamine from the package. BALDONADO took the box and left the residence before being approached by law enforcement. BALDONADO was shown a picture of James DAMASO and identified DAMASO as "Kuya." BALDONADO was transported to the Homeland Security Investigations (HSI) Office. Law enforcement continued surveilling 169 Chalan Nigas while trying to obtain a warrant to search the premises.

At about 10:15 PM, CET Officer Joseph Taijeron broadcasted on the radio that a male individual, later identified as JAMES RUMBAUA DAMASO (DAMASO) was seen leaving 169 Chalan Nigas. DAMASO entered a silver sport utility vehicle (SUV) and began driving down the hill on Chalan Nigas. HSI Special Agents Robert Ramirez, Richard Flores, and Erfel Mantanguihan stopped the only vehicle observed driving down the hill on Chalan Nigas. The vehicle was a gray Toyota Land Cruiser. The agents stopped the vehicle at the intersection of Chalan Nigas and Chalan Aniles. SA Flores made contact with the driver, who identified himself as DAMASO by presenting his Guam driver's license. DAMASO claimed he came from a friend's house, whom DAMASO identified as Jessica Quenga.

DAMASO was asked to exit the vehicle and then stand in front of the vehicle. When asked to place his hands out on his side for a pat down, DAMASO quickly placed both of his hands inside the front pockets of his pants. DAMASO was given instructions not to make any sudden movements and to remove his hands from his pockets. DAMASO removed his right hand from

his pocket but kept his left hand in his front pocket and appeared to be grasping an object. SA Mantanguihan tried to physically remove DAMASO's left hand from his pocket and observed a clear resealable bag that partially protruded from DAMASO's left pocket. DAMASO removed his left hand from his left front pocket. SA Mantanguihan patted down the left front pocket and felt a hard cylindrical shaped object within the interior of his pocket, as well as something metallic. DAMASO again quickly placed his left hand back in the pocket. SA Ramirez gave instructions for DAMASO to remove his hand from his pocket while SA Mantanguihan physically removed DAMASO's hand from his pocket. While SA Mantanguihan was pulling DAMASO's hand out of his pocket, SA Mantanguihan pulled a plastic bag completely out of DAMASO's pocket. SA Mantanguihan placed the bag at DAMASO's feet and the agents observed that the bag contained a crystal-like substance.

Agents performed a field test on the substance in the plastic bag and it field-tested presumptive positive for methamphetamine and weighed approximately 139.1 gross grams. Based on its appearance, this bag was not the sham methamphetamine delivered to DAMASO by BALDONADO. Agents observed the presence of clue spray on DAMASO's hands.

On July 25, 2019, agents executed a search warrant on DAMASO's vehicle and seized $31,000 US Currency along with Western Union receipts, a scale and glassine bags, and two concealment devices.

V. **CHARGE AND RELATED ISSUES**

The defendant is charged with one count of possession of methamphetamine hydrochloride with intent to distribute.

A. **Possession of Methamphetamine Hydrochloride with Intent to Distribute**

Possession of Methamphetamine Hydrochloride with Intent to Distribute is a violation of Title 21, United States Code Sections 841(a)(1) and 841(b)(1)(A)(viii) and Title 18 United States Code Section 2. The elements of the offense are:

> First: The defendant knowingly possessed methamphetamine hydrochloride; and
>
> Second: The defendant possessed it with the intent to distribute it to another person.

Ninth Circuit Manual of Model Criminal Jury Instructions No. 9.15. Distribution is defined in 21 U.S.C. § 802(11) as the delivery, other than by administering or dispensing (terms involving the legitimate transfer of controlled substances for medical or other legitimate purposes) of a controlled substance.

To "possess with the intent to distribute" means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction. *United States v. Delgado*, 357 F.3d 1061, 1065 (9th Cir. 2004); and *United States v. Ocampo*, 937 F.2d 485, 488 (9th Cir. 1991). An intent to distribute may be inferred from the attendant facts and circumstances, including the quantity of drugs possessed. *Ocampo*, 937 F.2d at 488 ("Possession of a large quantity of cocaine alone may be sufficient to infer both knowledge and intent"); *United States v. Innie*, 7 F.3d 840, 844 (9th Cir. 1993), *cert. denied*, 511 U.S. 1042 (1994) ("A jury may infer the intent to distribute a controlled substance from quantity alone"). Expert testimony may also be offered to show intent to distribute. *United States v. Gomez*, 908 F.2d 497, 502 (9th Cir. 1990).

**B. Forfeiture**

The indictment contains a Notice of Forfeiture pursuant to Title 21, United States Code, Section 853, giving the defendant notice of the Government's intent to seek forfeiture of various

properties constituting or derived from, proceeds obtained as a result of the alleged violations or otherwise used or intended to be used to commit or facilitate the commission of the violations. Entry of an order of forfeiture in a criminal case is considered part of sentencing. *Libretti v. United States*, 516 U.S. 29, 39 (1995). Nevertheless, the factual determination as to whether any property was involved or derived from an offense is a matter submitted to the jury. *United States v. Pelullo*, 14 F.3d 881, 904 (3rd Cir. 1994).[2]

The only issue for the jury is whether the Government "has established the requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(4). The jury itself does not order forfeiture; nor does it consider third-party claims. Fed. R. Crim. P. 32.2(b), (c). In this regard, the Government is submitting proposed jury instructions and a special verdict form. The jury's special verdict will serve as the basis for this Court to enter a preliminary order of forfeiture. Fed. R. Crim. P. 32.2(b)(2), (3). The final order of forfeiture will follow notice and advertisement of the preliminary order and will address any third-party claims. Fed. R. Crim. P. 32.2(b)(2), (c).

The jury does not consider whether defendants have an interest in the property to be forfeited; nor does the jury determine the extent of the defendants' interest in any property to be forfeited. These matters are considered by the Court in ancillary proceedings, following the jury's special verdict and entry of the preliminary order of forfeiture. Fed. R. Crim. P. 32.2(b), (c); Advisory Committee Note to Subsection (b). As a sentencing issue, the burden of proof is

---

[2] Fed. R. Crim. P 32.2(b), which became effective December, 2000, provides that this factual determination shall be made by the court unless a party requests that the jury determine whether the government has established the requisite nexus between the property and the offense. In an abundance of caution, in light of the Supreme Court's decision in *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000), the government requests that the Court submit the forfeiture issue to the jury unless the defendants waive any right that they might have to a jury trial on forfeiture. The government does not concede that *Apprendi* should be read to require a jury determination on criminal forfeiture and, indeed, would argue that *Libretti* has held to the contrary. The government nevertheless suggests that, absent defendants' agreement, forfeiture be submitted to the jury until this issue is resolved in this Circuit.

UNITED STATES' TRIAL BRIEF - 6

by a preponderance of the evidence. *See United States v. Dare*, 425 F.3d 634, 642 (9th Cir. 2005) ("[T]he preponderance of the evidence standard is the appropriate standard for factual findings used for sentencing.); *United States v. Myers*, 21 F.3d 826 (8th Cir. 1994) (preponderance standard applies because forfeiture is part of sentence in money laundering cases); *United States v. Voigt*, 89 F.3d 1050 (3rd Cir. 1996) (following *Myers*); *United States v. Smith*, 966 F.2d 1045, 1050-53 (6th Cir. 1992) (same for drug cases). Accordingly, the Government requests that the Court instruct the jury on preponderance of the evidence standard if and when the issue of forfeiture is submitted to them for decision. The Government will submit pertinent instructions on this issue prior to the forfeiture stage of this proceeding.

## VI. ANTICIPATED EVIDENCE

What follows is a brief summary of the testimony of the witnesses the government intends to call at trial. This list is not exhaustive.

### A. Postal Inspector Richard Tracy

Postal Inspector Richard Tracy will testify to his involvement in this investigation, including his participation in the controlled delivery of the Baldonado Package, the arrest of Jeffrey Baldonado, and the taking of Baldonado's statement.

### B. Jeffrey Baldonado

Jeffrey Baldonado will testify pursuant to his plea agreement in this case. Baldonado will testify that the Defendant asked him to receive and deliver packages for him. Baldonado was paid to receive the packages.

### C. CET Officer Joseph Taijeron

Officer Taijeron will testify to his participation in the controlled delivery in this case, and to assisting with the search of the Defendant's vehicle.

### D. Special Agent Robert Ramirez

Robert Ramirez is a Special Agent (SA) with Homeland Security Investigations (HSI). SA Ramirez will testify to conducting a stop of the Defendant's vehicle and participating in the apprehension of the Defendant.

### E. Special Agent Richard Flores

Richard Flores is a Special Agent (SA) with Homeland Security Investigations (HSI). SA Flores will testify to conducting a stop of the Defendant's vehicle and participating in the apprehension of the Defendant.

### F. Special Agent Erfel Mantanguihan

Erfel Mantaguihan is a Special Agent (SA) with Homeland Security Investigations (HSI). SA Mantanguihan will testify to conducting a stop of the Defendant's vehicle and participating in the apprehension of the Defendant. SA Mantanguihan conducted a black light test on the Defendant's hands and observed the presence of clue spray.

### G. Special Agent Erwin Fejeran

Erwin Fejeran is a Special Agent (SA) with HSI. SA Fejeran will testify to his participation in the investigation, including assisting in the search of the Defendant's car.

### H. Postal Inspector Connie Worrel

Postal Inspector Connie Worrel will testify as the lead case agent in this case. Inspector Worrel will give an overview of the investigations and the search warrants obtained. She will give expert testimony regarding the quantities of methamphetamine recovered and indicators of methamphetamine distribution including the money and drug paraphernalia found in the Defendant's car.

### I. Forensic Chemist Andrew M. Bowen

Andrew M. Bowen is a Forensic Chemist with the United States Postal Service in Dulles, Virginia. He analyzed the controlled substances seized in this case. All substances tested positive for methamphetamine hydrochloride.

### VII. EVIDENTIARY AND OTHER TRIAL ISSUES

#### A. Photographs

The Government intends to offer photographs into evidence. Under Rule 901 of the Federal Rules of Evidence, a witness familiar with a scene or object may provide a sufficient foundation for admission of a photograph by testifying that it fairly and accurately depicts the scene or the object at the relevant time. *See United States v. Brannon*, 616 F.2d 413, 416 (9th Cir. 1980), *cert. denied sub nom. Cox v. United States*, 447 U.S. 908 (1980). *See also People of the Territory of Guam v. Ojeda*, 758 F.2d 403 (9th Cir. 1985).

#### B. Witness Impeachment by Prior Bad Acts

Rule 608 of the Federal Rules of Evidence governs the impeachment of witnesses based on specific instances of their conduct. It permits inquiry into specific instances of a witness's conduct for the purpose of attacking the witness's credibility only on cross examination of the witness or of another witness who has testified as to the principal witness's character for truthfulness, and only if the prior instance of conduct is "probative of the character for truthfulness or untruthfulness." Fed. R. Evid. 608(b).

Rule 608 also prohibits proof of specific instances of a witness's conduct by extrinsic evidence. Fed. R. Evid. 608(b). Thus, even when Rule 608(b) allows inquiry into a specific instance of conduct probative of truthfulness, such as making false statements, it does not permit inquiry into the consequences of that act, such as an arrest or other disciplinary action for conduct.

*See id.*, advisory committee note ("[T]he extrinsic evidence prohibition of Rule 608(b) bars any reference to the consequences that a witness might have suffered as a result of an alleged bad act," listing suspension or other disciplinary action as an example); *see also United States v. Davis*, 183 F.3d 231, 357 n.12 (3d Cir.), amended, 197 F.3rd 662 (3d Cir. 1999) (stating that Rule 608 prohibits inquiry into a witness's suspension from work based on a prior bad act). Finally, inquiry into specific acts of a witness's conduct is subject to the Court's discretion, and the court may prohibit such inquiry under Rule 403. *See, e.g., United States v. Geston*, 299 F.3d 1130, 1137 (9th Cir. 2002).

### C. Duplicates

A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original, or (2) the circumstances make it unfair to admit the duplicate instead of the original. *See* Fed. R. Evid. 1003. The party opposing admission on Rule 1003 grounds has the burden of producing evidence to trigger one of these exceptions. *See, e.g., United States v. Stewart*, 420 F.3d 1007, 1021 n.13 (9th Cir. 2005); *see also United States v. Chang An-Lo*, 851 F.2d 547, 557 (2d Cir. 1988) (burden of challenging admissibility of duplicate rests with the party against whom it is offered); *United States v. Garmany*, 762 F.2d 929, 938 (11th Cir. 1985) (same); *United States v. Georgalis*, 631 F.2d 1199, 1205 (5th Cir. 1980).

### D. Chain of Custody

The Government's position is that the chain of custody in this case is sufficient to introduce the methamphetamine into evidence. The Ninth Circuit has held that the prosecution may establish chain of custody to lay a proper foundation for admission of physical evidence if it is able to prove that a reasonable juror could find that the evidence is in substantially the same condition as when seized and if there is a reasonable probability the evidence has not been

changed in important aspects. Merely raising the possibility of tampering is not enough to render evidence inadmissible. Finally, a defect in the chain of custody goes to the weight not admissibility. *United States v. Solorio*, 669 F.3d 943 (9th Cir. 2012); *United States v. Harrington*, 923 F.2d 1371 (9th Cir. 1991); *See generally* Fed. R. Evid. 901(a).

### E. Expert Witnesses

Rule 702 of the Federal Rules of Evidence provides that expert opinion is admissible if the witness is sufficiently qualified as an expert by knowledge, skill, experience, training or education; the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; the testimony is based on sufficient facts or data; the testimony is the product of reliable principals and methods and the expert has reliably applied the relevant principles.

An expert may testify in the form of an opinion or otherwise if his or her specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue. *Daubert v. Merrell Dow Pharm, Inc.*, 509 U.S. 579 (1993). Further admissibility of expert opinion turns on preliminary questions of law determined by the judge, including whether the testimony is relevant and reliable, and whether its probative value is substantially outweighed by risk of confusion of issues or undue consumption of time. *United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000).

### F. Statements of Non-Testifying Agents

During trial, agents may testify about other agents' surveillance. Such testimony is admissible under the present-sense impression exception of Rule 803(1) of the Federal Rules of Evidence. *See, e.g., United States v. Gil*, 58 F.3d 1414, 1422 (9th Cir. 1995) (testimony of agents who overheard observations of surveillance officers "easily satisfy the requirements" of

Rule 803(1), as "[t]he surveillance officers were providing a description of the events at the same time they were witnessing them, so the testimony was admissible under the present sense impression exception[.]"). This case-law survives *Crawford*. *See United States v. Solorio*, 669 F.3d 943, 952-54 (9th Cir. 2012).

### G. Prima Facie Threshold for Authentication

When proffered evidence is challenged on grounds of authenticity or identity, the evidence should be admitted once the government makes a prima facie showing of authenticity. *See United States v. Black*, 767 F.2d 1334, 1342 (9th Cir. 1985) ("[Rule 901] requires only that the court admit evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. The credibility or probative force of the evidence offered is, ultimately, an issue for the jury.") (quotation marks and citation omitted). In order to prove authenticity, there must be some evidence sufficient to support a finding that the evidence is what he proponent claims it to be. Fed.R.Evid. 901.

### H. Explanation of Investigation

An out-of-court statement is not hearsay when offered not for the truth but to explain how an investigation unfolded. *See United States v. Tenerelli*, 614 F.3d 764, 772 (8th Cir. 2010); *United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004); *United States v. Barela*, 973 F.2d 852, 855 (10th Cir. 1992); *United States v. Martin*, 897 F.2d 1368, 1371-72 (6th Cir. 1990); *United States v. Lowe*, 767 F.2d 1052, 1063-64 (4th Cir. 1985).

//
//
//
//

## VIII. CONCLUSION

This has been an outline of the case and a discussion of possible issues at trial. Since issues not covered here might come up at trial, the United States would respectfully seek leave to submit further briefs as necessary to assist the Court.

Respectfully submitted this 15th day of November, 2019.

SHAWN N. ANDERSON
United States Attorney
Districts of Guam and the NMI

By: _____
Laura C. Sambataro
Assistant U.S. Attorney